IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:26-cv-23010

MARC J. GOLDNER, Goldner Blatt Investments, LLC, Rachel Korsen, Simon Divilov, Jasmine Garcia, and The Dharma Initiative, LLC,

Plaintiffs,

v.

ELI M. BLATT, MegaCap Capital, LLC, MegaCap Funds, LP, MegaCap Funds, LP – Tech Holding, MegaCap Funds, LP – Tech I, MegaCap Funds, LP – SpaceX I, Anthropos, LLC, Mythic Alpha, LLC, Thinkable, LLC, Michael Elkins, Wayaca, LLC, Flow, Inc., BitSource, LLC, JPMorgan Chase & Co., and Bank of America Corporation,

Defendants.
_______________________________________/

**PLAINTIFFS' EXPEDITED MOTION & MEMORANDUM OF LAW IN SUPPORT OF REQUEST FOR PRELIMINARY INJUNCTION BARRING SALE OF INTERESTS OR OTHER DISPOSITION OF ASSETS**

Stanley Q. Casey, Esq.
LAW OFFICES OF STANLEY Q. CASEY PLLC
515 N Flagler Dr., Suite 350
West Palm Beach, FL 33401
Telephone: (305) 946-1510
Fax: (561) 468-2589
Email: scasey@sqcaseylaw.com
*Attorney for Plaintiffs*

MARC J. GOLDNER (“Mr. Goldner”), SIMON DIVILOV (Dr. Divilov), and GOLDNER BLATT INVESTMENTS, LLC (“GBI”) (collectively “Plaintiffs”) by and through undersigned counsel hereby moves this Court for an order granting a Preliminary Injunction (“PI”) preventing the Sale, Liquidation, or other Disposition of Fund Assets pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Plaintiffs have filed a Complaint in association with this Motion (Exhibit 13), and in support thereof states as follows:

**STATEMENT OF FACTS**

Plaintiffs have brought suit against Eli M. Blatt (“Mr. Blatt” or “Defendant”) and additional Defendants in connection with Mr. Blatt’s unauthorized actions of commandeering the management, access, and membership of Defendants, MegaCap Capital LLC (“MCC”) and its affiliated entities, including but not limited to MegaCap Funds, LP (“MCF”), MegaCap Funds, LP – Tech Holding (“MCTI”), MegaCap Funds, LP – Tech I (“MCTI”), MegaCap Funds, LP – SpaceX I (“MCSX”), (collectively referred to as “MegaCap Defendants”) (collectively referred to with Mr. Blatt as “Defendants”) and Mr. Blatt’s attempted takeover of MegaCap Defendants through his entity Anthropos, LLC, a wrongfully admitted MegaCap Member. (Ex. 15 Page 4, Ex. 10 ¶ 38-39, 42, 67, 68, 72).

As set forth more fully in the Complaint against Mr. Blatt, the Complaint against the MegaCap Defendants, and the related proceedings captioned *Blatt et al v. Goldner et al.*, Case No. 9:26-cv-80004 and *Megacap Capital LLC v. West Coast Equity Partners II LLC et al*, Case No. 0:26-cv-61179 (two of the many “Related Cases”), the core dispute surrounds Mr. Blatt’s attempt to unlawfully remove, withdraw, and redeem Mr. Goldner from MCC and the MCC managed Special Purpose Vehicles (“SPVs”) which are part of the MCF Series LLC in Delaware. (Ex. 7 starting on pg. 64 and Ex. 8). Mr. Blatt is now unilaterally transacting with assets held at MCC,

MCTH, MCC, and MCTI which belong, in part, to Plaintiffs, while this case is pending. This PI focuses on MCC and its managed SPVs stemming from MCF such as MCTI, MCSX, and MCTH.

Preceding and during Mr. Blatt's now dismissed suit against Mr. Goldner, and since the initiation of the Closed Case, Mr. Blatt and the MegaCap Defendants interfered with Mr. Goldner's business interests by unlawfully restricting his access to critical business operations and systems, including MCC's Google Workspace, MCC, MCTI, MCTH, MCSX, and MCF's bank accounts, MCC's domain login at GoDaddy, MCC's Delaware Registered Agent login portal, and the MegaCap fund administrator portal at Flow, Inc ("Flow"). Mr. Blatt also attempted to option, assign, transfer, sell, subscribe, liquidate, provide unauthorized discounts, and/or dilute the MegaCap Defendants' assets, which belong, in part, to Mr. Goldner, without Mr. Goldner's consent, approval, or authorization by contacting third parties, not yet directly named in this series of litigation, to facilitate these unauthorized transactions.

Mr. Goldner hereby requests a Preliminary Injunction ("PI") barring Mr. Blatt and MegaCap Defendants from operating, selling, transferring, or encumbering any of their interests, assets, equity, derivative equity, property, or shares of companies including but not limited a futuristic technology company ("[TECH]") that is the Target Portfolio Company of MCTH and MCTI, and SpaceX which is the target portfolio company of MCSX, so that Mr. Goldner may adequately protect his interests, obtain equitable remedy, and maintain the status quo until a court of law adjudicates the dispute between the parties. Without the PI, Mr. Goldner will be irreparably harmed should Mr. Blatt assign, transfer, option, subscribe, liquidate, dilute, discount, or sell interests that belong to Mr. Goldner and could suffer damages in the tens of millions of dollars.

Specifically, it has come to Mr. Goldner's attention that, while there is an active dispute regarding Mr. Blatt's authority to do so, Mr. Blatt is attempting to sell the property, assets, equity,

derivative equity, or interests of the MegaCap Defendants and raise capital from prospective LPs through the MCTI and MCTH SPVs relating to the [TECH] investment. (*See* Goldner Affidavit, Ex. 1). On or about February 17, 2025, Mr. Blatt communicated with Amos Curtis, a Limited Partner of MCTI, and stated "BTW we have more inventory. And I can give a bonus in equity if for any referrals" and "We have more shares to sell. If you intro someone who invests, I can give you additional shares as a referral bonus." (Ex. 2).

However, what Mr. Blatt failed to tell Mr. Curtis is that Mr. Blatt does not have the authority: (i) to provide a "referral bonus" to Mr. Curtis, as Mr. Curtis is not a FINRA Registered Broker dealer, nor is Mr. Blatt, and is therefore unable to earn a success fee as per Rule 2040 of FINRA's rules[1]; (ii) to give additional shares as those shares belong, in part, to Mr. Goldner through Mr. Goldner's Limited Partnership interest of [TECH] held at MCTH, said shares being part of the active litigation between, *inter alia*, Mr. Goldner and Mr. Blatt[2]; (iii) to sell any shares in MCTI as MCTI itself does not have any "shares," and actually only has derivative equity interest in [TECH] through an Option agreement with MCTH as set out in the MegaCap Resolutions (Exhibit 9); and (iv) to make representations that MCTI has "inventory" because the remaining inventory belongs, in part, to Mr. Goldner, through Mr. Goldner's Limited Partnership interest in MCTH. In fact, MCTI does not have any held inventory until a Limited Partner actually subscribes to MCTI.

Mr. Blatt's continued actions may result in MCTI potentially losing its Reg D 503(b) exemption status for Private Placements as defined by the Securities and Exchange Commission[3], the losing of which would materially hamper and damage MCTI and the other MegaCap

---

[1] https://www.finra.org/rules-guidance/rulebooks/finra-rules/2040

[2] Structurally, Mr. Blatt is selling MCTH derivative equity interest in [TECH] that belongs to Mr. Goldner to MCTI, a Limited Partnership, that onboards third party Limited Partners ("LPs") for a Carried Interest, Annual Management Fee, fee, and other fees.

[3] https://www.sec.gov/resources-small-businesses/exempt-offerings/private-placements-rule-506b

Defendants' beyond recovery and destroy their ability to conduct business, as well as prevent Mr. Goldner from being entitled to earn his share of annual Management Fees and the Carried Interest from MCC as a Member of the General Partnership managing MCTI. Further, on or about August 7, 2023, Mr. Blatt attempted to sell "inventory" of [TECH] to Matt Slater of Stateless Capital, but this time offered to impermissibly "waive the management fee or discount the carry some," once again, without Mr. Goldner's authorization. (Exhibit 3).

However, Mr. Blatt is unable to "discount the carry some" as it would reduce Mr. Goldner's Carried Interest and such a reduction requires Mr. Goldner's consent, authorization, and approval, which Mr. Blatt cannot unilaterally supersede or override unless a court of law adjudicates Mr. Blatt to be the sole owner, a position which is in dispute in the underlying case *Blatt et al v. Goldner et al*., Case No. 9:26-cv-80004, and the filed Complaint upon which this motion is brought.

Then, on or about December 19, 2024, Mr. Goldner learned that Mr. Blatt was attempting to either transfer, sell, or assign interest of at least one of the MegaCap Defendants to or from Owen Meyer ("Mr. Meyer") of Meyer Global Management, presumably in a trade or transaction involving the Primary Supplier of [TECH]. Upon information and belief, Mr. Goldner was put under the impression that Mr. Blatt was trying to sell or assign to Owen Meyer Mr. Goldner's shares in [TECH]. Additionally, waiving and/or accelerating the Management Fee is likewise an action that would require Mr. Goldner's consent, authorization, and approval, which Mr. Blatt clearly and explicitly does not have. Despite this requirement, in at least one known instance, Mr. Blatt issued improper K1s that have accelerated the 0.5% annual management fees due from LPs of MCTI to 5% without Mr. Goldner's authorization or approval and in direct contravention to Mr. Blatt's email stating to Limited Partners, "In the interim, we can report definitively that **the loss will be 0.5 of your capital commitment**, representing one tenth of the 10-

years of 0.5% management fees." (emphasis added) (Ex. 4). Mr. Blatt is in breach of his fiduciary duty to MCC, to Mr. Goldner, and to LPs such as Dr. Divilov by taking these actions unilaterally without consent, approval, or authorization of Mr. Goldner.

Mr. Goldner was able to obtain letters from the Primary Supplier of [TECH] on or about June 20, 2023, as well as the Supplier for another MegaCap Funds, LP investments in another futuristic space company ("SpaceX") on or about June 6, 2023, which should have prevented Mr. Blatt from selling partnership interests. (Exhibits 5 and 6 respectively). The SpaceX investment is through the MCC managed SPV called MegaCap Funds, LP – SpaceX I.[4]

The content of the Primary Supplier letter of [TECH] entails that, in line with what Mr. Goldner is requesting herein, that "there will be no distributions or movement of your holdings until all parties of MegaCap sign and agree when there is a required liquidity event." (Exhibit 5). Mr. Blatt is aware of the Supplier letters and Suppliers position on the [TECH] and SpaceX holdings, however continues to disregard its contents and has escalated his wrong position. As such, any attempts to sell or transfer any shares of [TECH] or SpaceX are inherently impossible, fraudulent, and damaging to MCC, its managed SPVs, Plaintiffs and Plaintiffs interests. However, it has come to light that Mr. Blatt is attempting to bypass this notice from the Primary Supplier of [TECH] by attempting to raise capital, sell interest in MCTI and MCTH, offer subscription to prospective LPs, or transfer, assign, option, or sign a forward contract, or an agreement of any nature despite these limitations. For the reasons set out above, Mr. Blatt should not be able to do so until a court of law has adjudicated upon Mr. Goldner and Mr. Blatt's dispute in Case 9:26-cv-80004 and this case.

Mr. Blatt sought documentation from the Primary Supplier, specifically demanding an

[4] Mr. Blatt and MegaCap Defendants, under Blatt's unauthorized control, materially breached the various Confidentiality Provisions by disclosing the previously mentioned "FRONTIER" in *Blatt v. Goldner et al,* Closed Case No. 1:23-cv-24819, DE 93 ("Previous TRO"). Mr. Blatt failed to disclose the related nature of the GlobalX and West Coast Equity Partner lawsuits.

unredacted forward contract (the "Documentation") with a key source and Supplier of [TECH] in order to, upon information and belief, facilitate an unauthorized sale of MCTH, MCC, or MCTI assets. *Alternatively*, the Documentation would materially assist Mr. Blatt in facilitating a transaction and/or sale of assets contained in MCTH, MCC, or MCTI. Specifically, Mr. Blatt emailed the Primary Supplier of [TECH] on or about November 11, 2024, stating, "Please send a copy of the forward contract with only the seller name redacted (since I know it already it doesn't matter)." (Exhibit 1). Upon information and belief, Mr. Blatt is attempting to raise capital, by way of, *inter alia*, selling Mr. Goldner's 8,217 shares of [TECH], for Mr. Blatt's own personal use and to fund these litigations and his personal and exorbitant lifestyle.

Since then, Mr. Blatt filed a complaint against the Primary Supplier of [TECH] in Florida State Court without permission from Mr. Goldner to initiate the legal action. (Ex. 18). This related case, which Mr. Goldner plans to intervene in and initiate its removal to federal court, is captioned *Megacap Funds LP Tech Holding vs Laren Pisciotti, et al.*, with a Local Case Number 2025-015565-CA-01, filed on August 11, 2025, in the Circuit Court of Miami-Dade County. Additionally, Mr. Blatt filed an unauthorized lawsuit against the Supplier of SpaceX on April 22, 2026, Case # 0:26-cv-61179 in S.D. Fla., captioned *Megacap Capital LLC v. West Coast Equity Partners II LLC et al.,* (Ex. 19) ("WCEP"). In the WCEP case, Mr. Blatt is attempting to circumvent Case 9:26-cv-80004 and this case under the disguise of creating an emergency to determine the threshold issue of MegaCap's membership. Mr. Blatt's vexatious and frivolous continued filings are a real present threat. Mr. Goldner is a real party in interest pursuant to Rule 19 and Mr. Blatt bypassed his own filed Case No. 9:26-cv-80004 and this Action by asking *another* court to determine Mr. Goldner's rights without his involvement.

Further, Mr. Blatt is harming the MegaCap assets themselves because pursuant to the

applicable West Coast Equity Partners ("WCEP") contracts, MegaCap will be forced to indemnify WCEP and cover its legal expenses for defending itself against Mr. Blatt's frivolous lawsuit. Worse, Mr. Blatt through MegaCap, is seeking emergency relief to obtain the SpaceX assets after its IPO that occurred on June 12, 2026 and this will irreparably harm Goldner if that occurs. Now there is an imminent risk of harm to Mr. Goldner based upon the filings in the WCEP litigation.

Mr. Goldner was previously not aware of any further material sales attempts by Mr. Blatt until learning of the communications between Mr. Blatt with Mr. Meyer that took place on or about December 19, 2024, and with Mr. Curtis on February 17, 2025. Then, once the Previous TRO and PI was filed, Mr. Goldner was under the impression that Mr. Blatt and the MegaCap Defendants abated further conduct until all of the relevant matters could be resolved before Judge Gayles. Prior to the Previous TRO and PI, Mr. Goldner previously believed that Mr. Blatt's attempted sales were halted following Mr. Blatt's knowledge of the letter provided by the Primary Supplier of [TECH] that Mr. Blatt became aware of on or about November of 2023. (Ex. 1).

Then, once Mr. Blatt's ***fourth*** complaint was dismissed, partially with prejudice, in the Closed Case, Mr. Goldner discovered through a frivolous email sent by Mr. Blatt's counsel, Mr. Kelsky, that Mr. Blatt was attempting to purchase Mr. Goldner's assets in the MegaCap Defendants for $1 in September of 2025. This is not the first time Mr. Blatt tried this, as he tried purchasing Mr. Goldner's assets for $1.70 in 2023. Both unconscionable offers were rejected. Regardless, it was discovered in the falsely prepared accounting that Mr. Blatt had been selling interest in MegaCap Defendants, that belong, in part, to Mr. Goldner, as the report showed that MegaCap had cash on hand exceeding $100,000 meaning Mr. Blatt was wrongfully selling interest that belongs to Mr. Goldner, in part, and he has no right to sell such interest without Mr. Goldner's permission. (Ex. 15). Sometime around February of 2026, the MegaCap Defendants at Mr. Blatt's

unauthorized control, along with his entity Anthropos, LLC whom Mr. Blatt wrongfully admitted as a new MegaCap Member of MegaCap, directly in breach of the MegaCap Capital Operating Agreement ¶ 38-39, 42, 67, 68, 72 sent a Tender Offer[1] to the Limited Partners of MCSX. (Exhibits 15, 21). However, Mr. Blatt failed to provide this same tender offer to certain LPs, specifically, Dr. Simon Divilov, and in direct and clear breach of Mr. Blatt's and the MegaCap Defendants' fiduciary duties to *all* Limited Partners of MegaCap's SpaceX SPV. (Ex. 16, 17).

In the Tender Offer contained in Exhibit 16, Mr. Blatt states, "We have received a bona fide third-party tender offer via one of the major secondary market platforms to purchase our SpaceX interests at a price of **$553.35 per share**, implying an equity valuation of approximately **$1.35 trillion** for SpaceX." (emphasis in the original). Mr. Blatt goes on to acknowledge that, "At closing, the following fees would apply: A **5% transaction fee** payable to the General Partner (GP) And **the carried interest** (the "Carry")." (emphasis in the original). The crucial and fatal misstep here is that Mr. Blatt ignores that by initiating a closing without Mr. Goldner's authorization, Mr. Blatt is depriving Mr. Goldner's expected ***future*** Carried Interest that would be earned upon an expected Initial Public Offering of SpaceX. Mr. Blatt cannot escape this reality by attempting to identify "risks" that may exist, as the LPs of MCSX do not have that decision making authority to determine when there would be a closing or early liquidity event for SpaceX. Further, Mr. Blatt ignores the reality of the expected spin-off of Starlink, a part of SpaceX.[2]

Most recently, around the middle of March 2026, Mr. Blatt has continued his scorched earth litigation tactics against not just the Primary Supplier of TECH, but now also the Broker

---

[1] Mr. Blatt attempt at trying to bypass the Supplier of MCSX letter provided to Goldner (Ex. 6), as evidenced by Mr. Blatt's latest lawsuit against Supplier of MCSX (Ex. 19), show Mr. Blatt must be enjoined from his misconduct.

[2] Mr. Blatt used this as a vehicle to take a lower portion of carried interest and take the entire 5% transaction, while he ties up the Plaintiffs in near perpetual litigation since 2023 while he covertly tries to sell the SPV and keep all fees and interest for himself. Mr. Blatt is permanently harming the MegaCap Defendants' ability to do business by suing both Suppliers of TECH and SpaceX.

Dealer ("BD") of TECH. Mr. Blatt has baselessly sent demand letters to the BD and threatened FINRA action unless the Broker Dealer complies with Mr. Blatt and the MegaCap Defendants baseless demands. Mr. Blatt's frivolous demands are allegedly related to a comfort letter that the Broker Dealer historically provided on the TECH transaction. Around this time, Mr. Goldner was made aware that Mr. Blatt presented a member of the Broker Dealer with a comfort letter that, according to the Broker Dealer, appears to be doctored. It should be noted that this is not the first time that Mr. Blatt has doctored important documents, as Mr. Blatt submitted a doctored declaration to this Honorable Court, as will be detailed below. It was at this time that Mr. Goldner was made aware from the Broker Dealer's statements that Mr. Blatt and the MegaCap Defendants are trying to double sell the inventory of TECH in the market. Due to Mr. Blatt apparently restarting his attempts to sell, at least in part, Mr. Goldner's rights and interests to 8,217 shares in [TECH] and attempting to provide a Tender Offer to the LPs of SpaceX which would thereby dissolve the prospect of future gains Mr. Goldner is entitled to, the instant motion is necessary to stop irreparable harm to Plaintiffs. Mr. Goldner acted immediately to halt Mr. Blatt's sale of [TECH], contacting the Primary Supplier about it on the same day that he first learned of Mr. Blatt's attempted sale on or about May 31, 2023, which eventually lead to the June 2023 letter from the Primary Supplier that clearly stated that "there will be no distributions or movement of your holdings until all parties of MegaCap LLC sign and agree when there is a required liquidity event." Then, Mr. Goldner filed the Previous TRO to ensure Mr. Blatt and MegaCap Defendants would seize any harmful conduct to Mr. Goldner. Thus, at all relevant times, Mr. Goldner had a reasonable belief that no harm would come to Mr. Goldner's rights and interest to his right to 8,217 shares of [TECH] and his rights and interest in his value relating to SpaceX upon a liquidity event, until Mr. Blatt's revived attempts proved to the contrary of reasonable expectations.

## MEMORANDUM OF LAW

### A. Fed. R. Civ. P. 65(b)'s Standard for Issuance of a Preliminary Injunction

Pursuant to Rule 65(b) of the Fed. R. Civ. P., a movant may obtain a Preliminary Injunction by establishing that: (1) there is a substantial likelihood that it will prevail on the merits of its claim; (2) the movant will suffer irreparable injury if the relief is not granted; (3) the asserted injury to the movant outweighs the harm of which the Temporary Restraining Order and/or Injunction would cause to the opposing party; and (4) the Temporary Restraining Order and/or Injunction would not be adverse to the public interest. *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam); *Falls v. DeSantis*, 609 F. Supp. 3d 1273, 1281 (N.D. Fla. 2022). "Although a 'preliminary injunction is an extraordinary and drastic remedy,' it should be granted if 'the movant "clearly carries the burden of persuasion" as to the four prerequisites.'" *Falls*, 609 F. Supp. 3d at 1281 (quoting *United States v. Jefferson Cnty*., 720 F.2d 1511, 1519 (11th Cir. 1983).

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). In order to show irreparable harm, "a plaintiff must present an injury "of such a nature that no fair and reasonable redress may be had in a court of law" and must show that "to refuse the injunction would be a denial of justice."" *Aquila, Inc. v. Quanta Services, Inc.*, 805 A.2d 196, 208 (Del. Ch. 2002) (citing *Kohls v. Duthie*, 765 A.2d 1274, 1289 (Del.Ch.2000)). "The alleged injury must be imminent and genuine, as opposed to speculative." *Id*. "Of the three factors, irreparable harm is the most

important; it is the sine qua non for this form of relief." *IMO Daniel Kloiber Dynasty Trust*, 98 A.3d 924, 937 (Del. Ch. 2014).

### B. <u>Mr. Goldner Is Substantially Likely To Succeed On The Merits As To His Improper & Unilateral Removal By Mr. Blatt</u>

Among other claims, Mr. Goldner brings claims for breach of contract, fraud, and breach of fiduciary duty concerning Mr. Blatt's improper attempted removal and invalid redemption of Mr. Goldner in contravention of various MegaCap agreements. On or about May 5, 2023, Mr. Blatt issued an unauthorized withdrawal notice regarding Mr. Goldner, effectively locking him out of key business systems, including MCC's Google Workspace, bank accounts, and fund administration portal at Flow, thereby excluding Mr. Goldner from participating in the governance and oversight of the MegaCap Defendants' operations. This is in direct contravention to the MegaCap Resolutions (Ex. 9).[6] The MegaCap Resolutions further explain the 8,217 shares.[3]

---

[6] "Additionally, Eli will make Marc a super-admin with equal administrative privileges as Eli has in the MegaCap google workspace and any other accounts relating to MegaCap. If Eli fails to complete this within reasonable time after such filing, or **if Marc or Eli uses such privileges to alter Eli's or Marc's privileges, it shall constitute immediate grounds for involuntary withdrawal from the Company.**" (emphasis added) ""**FURTHER RESOLVED**, upon the signing of this Resolution and the Option and Loan Agreement, the Company shall irrevocably assign to each Member (or to an entity and/or entities and/or person(s) of each Member's choosing) a portion of the MCTH Option (as defined in the Option and Loan Agreement) to 8,217 shares of derivative [TECH]." (Exhibit 9).

[3] The February 2023 Resolutions state, "**FURTHER RESOLVED**, that, pursuant to the provisions in this agreement relating to derivative equity in [TECH] assigned to the Class A Members and/or their assigns and/or their designees, without the consent of the other member, the Class A Members shall each have an option on a forward contract (which may be assigned to any person(s) and/or entity and/or entities at each member's sole election) with the Company on the equivalent of 8,217 shares of derivative equity in [TECH] at $[REDACTED] PPS [TECH] equivalent via either (i) equity in MCTH; (ii) the derivative equity held in trust by MCTH; or (iii) equity in MCTI with a side letter waiving all Management Fees and Carried Interest and rebating $[REDACTED] Per Share; (all of which define the "Member Option"), or (iv) an ability to choose to become a Limited Partner of MCTH, without the consent of the General Partner or any of the Class A Members of the Company, for their 8,217 share equivalent of derivative held in [TECH] (which is considered the 'non-option' 'non-forward contract' version of the assignment of interest to the Member and/or their assigns and/or their designees). This Member Option is irrevocable, and, once granted, cannot be revoked by the Company, MCTH, or MCTI. In the event that a court of law should ever determine that the Company and not MCTH is the owner of the shares and/or derivative equity, then the same Member Option with respect to MCTH granted to the Class A Members of the Company (along with their assigns and/or designees) shall be given the same alternative options (listed above) to said Members and/or assigns and/or designees with respect to the Company for the shares and/or derivative equity of [TECH] in the amount of 8,217 shares each. For clarity, the derivative equity held in trust by MCTH will be managed by the Company and its Class A Members unanimously, and each Class A Member and/or their assigns and/or designees has an option on a forward contract for 8,217 shares of derivative equity in [TECH] held in trust by MCTH, in the form of a forward contract on either the derivative equity itself, equity in MCTH, or equity

Mr. Goldner is likely to succeed on the merits in the underlying case by virtue of the fact that Mr. Blatt's unilateral removal of Mr. Goldner was invalid, improper, and impermissible. Specifically, because Mr. Blatt has abused his access as a "super-admin" on Google WorkSpace to alter Mr. Goldner's privileges, including failing to make Mr. Goldner a "super admin with equal administrative privileges as" Mr. Blatt in the "MegaCap google workspace and any other accounts relating to MegaCap," not only does Mr. Blatt not have the right to remove Mr. Goldner, Mr. Goldner has legal grounds to have Mr. Blatt removed as a Manager and Member of MCC instead as per the Resolutions signed in Feb, 2023.

Mr. Blatt purported to have some dispute with Mr. Goldner and, based thereon, issued a unilateral resolution to remove Mr. Goldner, claiming that Mr. Blatt had the sole authority to do so without even informing Mr. Goldner, and while ignoring the peremptory dispute resolution process outlined in the MCC OA and 2023 Resolutions. Again, without informing Mr. Goldner, Mr. Blatt allegedly attempted to secretly demote Mr. Goldner from a Class "A" voting member to a Class "B" non-voting member. (Ex. 20) As detailed in Complaint, Mr. Blatt's alteration of Mr. Goldner's membership class status from "A" to "B" could not have been done without Mr. Goldner's expressed consent as the MCC Operating Agreement, MegaCap Memorandum of Understanding, and the MegaCap Resolutions all do not provide for unilateral and secret alteration of membership status, instead, expressly requiring the opposite. (Ex. 13).

Further, it was discovered in the Closed Action that Mr. Blatt had attempted to secretly withdraw Mr. Goldner in January of 2023, again without providing notice to Mr. Goldner. It was then discovered through later filings in Mr. Blatt's newest ***sixth*** complaint in the related action,

---

in the Company, or any other alternatives listed in (i), (ii), (iii), and/or (iv) (or a combination thereof), without needing the consent of the other Class A Members. Each Member and/or their assigns and/or designees shall not need the consent of the other Class A Members to manage their 8,217 shares of derivative equity held in [TECH]."

that Mr. Blatt had edited his previous declaration signed under penalty of perjury in the prior action and removed one key paragraph relating to Attorney Michael.[6] (Exhibit 22). As such, Mr. Goldner stands to have his full control restored and Mr. Blatt removed instead.

Further, any decisions and transactions involving the assets, equity, derivative equity, shares, carried interest rates, management fees, options, and financial operations at MCC require Mr. Goldner's approval, authorization, and consent, including but not limited to Mr. Blatt's attempts to sell to Mr. Curtis and Mr. Meyer additional inventory of [TECH], which Mr. Blatt has no authority to sell, transfer, assign, or subscribe any LPs into MCTI without Mr. Goldner's authorization, approval, and consent or a court of law finding that Mr. Blatt has the right to. Moreover, the actions taken by Mr. Blatt threaten to dispossess Mr. Goldner of his rightful assets, equity, and shares in the form of Mr. Goldner's 8,217 derivative equity shares of [TECH], as well as Mr. Blatt's attempt to provide a Tender Offer to the LPs of MCSX stand to deprive Mr. Goldner of his expected future Management Fees and Carried Interest due.

The evidence strongly supports that Mr. Blatt acted in violation of the governing documents of MegaCap, specifically the MCC OA, the MCC MOU, and the MegaCap Resolutions, which are governed by Delaware law. (Exhibits 10, 11, and 9 respectively). These agreements clearly outline the shared management and economic rights between Mr. Goldner and Mr. Blatt. Mr. Blatt's unilateral actions taken without Mr. Goldner's consent, authorization, or approval clearly violates the MCC OA, the MCC MOU, and the MegaCap Resolutions, including unauthorized asset sales, misrepresentation of his management authority, and exclusion of Mr. Goldner from MCC's operations, including Mr. Blatt's unilateral attempted removal of Mr. Goldner in breach of the Resolutions, specifically of Mr. Goldner's access to the Google Workspace for MCC, and access

[6] See 1927 Sanctions Motion in the Related Action [DE 13 and 22 in Prior Action], Motion to Dismiss [DE 28 and 35 in Prior Action].

to the banking, domain, agent, and Flow accounts.

These breaches by Mr. Blatt put the MegaCap Defendants in a position to sell assets and/or interest to Mr. Blatt's exclusive economic benefit, that, at least in part, rightfully belong to Mr. Goldner. Mr. Blatt's unilateral actions, including removing Mr. Goldner from key business systems as detailed above, attempting to sell the MegaCap Defendants core assets and/or interest that belong, in part, to Mr. Goldner without Mr. Goldner's consent, and misrepresenting Mr. Blatt's authority to third parties, constitute clear breaches of fiduciary duties and contractual obligations. Delaware courts have consistently held that actions in contravention of operating agreements and fiduciary duties warrant judicial intervention. Also, the MCC OA, MCC MOU, and MegaCap Resolutions explicitly state Mr. Goldner's ownership interest in his 8,217 shares of derivative equity interest of [TECH]. Mr. Blatt's actions of attempting to sell the entities and shares deviates sharply from the status quo and goes directly against the governing agreements.

Mr. Blatt's unauthorized actions threaten the safety of Mr. Goldner's assets, derivative equity, assignments, interest, and right to 8,217 shares of [TECH]. Mr. Blatt's attempts to demand shares from MCSX's Supplier, and sell MCTH and MCTI interests without consent, approval, or authorization from Mr. Goldner, have caused and continue to cause irreparable harm to Mr. Goldner's business interests and economic security in his assets in [TECH], MCC, MCTH, MCF, MCSX, and MCTI. Here, the issuance of a PI preventing Mr. Blatt and MegaCap Defendants from liquidating and/or distributing Mr. Goldner's and MegaCap's fund assets is the only manner in which to preserve the status quo. The reason why monetary damages will not be able to compensate this concern is because Mr. Goldner will "be deprived of their [opportunity] to realize higher values in the investment." *Robert M. Bass Grp., Inc. v. Evans*, 552 A.2d 1227, 1246 (Del. Ch. 1988).

Ultimately, should any sale be permitted to go through and Mr. Goldner is successful in

obtaining relief in the Complaint against Mr. Blatt, Anthropos, the MegaCap Defendants, and the Additional Defendants, Mr. Goldner would likely be deprived of the core assets of the MegaCap Defendants, specifically 8,217 shares of derivative equity of [TECH] held at MCTH, Mr. Goldner's portion of the MCC Carried Interest both from SpaceX and TECH, Mr. Goldner's portion of the MCC annual Management Fee earned (and salary) by managing MCC managed SPVs, and assets that rightfully belong to Mr. Goldner and the entities, rendering any order given by this Honorable Court to be moot if a Preliminary Injunction is not granted.

### C. <u>If Mr. Goldner's and MegaCap's Assets Are Not Enjoined, Mr. Goldner Will Be Irreparably Harmed</u>

As set forth in detail in the Complaint, Mr. Blatt's withdrawal of capital from MCC, MCTI, and MCTH from unauthorized subscriptions signed at MCTI and/or MCTH will allow Mr. Blatt to misappropriate the cash equivalent to the 8,217 shares of [TECH]. If he is not enjoined from taking such actions, Mr. Goldner would have a tremendous uphill battle, requiring further litigation with new third parties not yet named in this instant action to simply vindicate his rights and reobtain any of his property, derivative equity, and interests sold by Mr. Blatt. These actions directly undermine Mr. Goldner's economic interests and management rights. Crucially, Mr. Goldner is listed with Mr. Blatt on Form 8832 filed with the IRS. (Ex. 12).

Mr. Blatt's misrepresentation of authority has already caused significant disruptions within all of the MegaCap related entities' affairs and business operations. Furthermore, Mr. Blatt improperly retained control over MCC, MCTI, MCTH, and MCF (including MCSX) financial resources, including unauthorized withdrawals from capital raise accounts both before and after Mr. Blatt illegitimate and secret improper removal attempts. This financial mismanagement not only risks depleting company assets but also threatens to divert funds to accounts directly under Mr. Blatt's personal and/or exclusive wrongful control and beyond the Court's jurisdiction,

making recovery nearly impossible even if Mr. Goldner prevails.

Mr. Blatt's conduct is not isolated. It includes a pattern of unauthorized actions, such as entering into binding contracts without proper authority, withholding critical information from Mr. Goldner, and now filing a lawsuit against the Primary Suppliers of TECH and FRONTIER without Mr. Goldner's authorization, consent, or approval and while Mr. Blatt's own authority to do so is in dispute. These actions have destabilized all of the related MegaCap entities' governance structure and created operational chaos, threatening the company's continued ability to conduct business effectively now and in the future. The cumulative effect of Mr. Blatt's misconduct is a direct and imminent threat to Mr. Goldner's economic interests, management rights, and professional reputation. Without immediate judicial intervention, Mr. Goldner will suffer harm that no legal remedy can fully address. Therefore, the relief requested herein is necessary to prevent further irreparable harm and to preserve the core business infrastructure of MegaCap.

**D. <u>The Risk of Harm to Mr. Goldner Greatly Outweighs Any Inconvenience of a Preliminary Injunction for MegaCap</u>**

Mr. Goldner's request for a PI merely seeks to maintain the status quo during this lawsuit by preventing Mr. Blatt from improperly dissipating and depleting assets and unilaterally selling partnership interests to other investors and third parties. The assets will not experience any devaluation during the pendency of this lawsuit. Mr. Blatt himself has stated on numerous occasions that [TECH] could '100x.'[4] Importantly, preventing the sale of disputed interests while the Court adjudicates Mr. Goldner's claims preserves available remedies at law that shall otherwise be extinguished despite Mr. Blatt's liability. On the other hand, allowing Mr. Blatt to engage in deceptive solicitation without accountability for his violations of law would likely promote the

[4] In Mr. Blatt's own Accounting (Ex. 15, Pg. 17), he shows a Future IPO Payoff of TECH to be 20X. "IPO multiple: 20 × adjusted price [sic] USD 904.40 per share…Payoff at IPO: [sic] = USD 47.78 million"

continuation of such practices. Therefore, this Honorable Court should issue the requested PI.

Mr. Blatt will not suffer harm from being enjoined from unauthorized actions, while Mr. Goldner risks irreparable damage to his business and personal interests, as well as his professional reputation if forced to pursue further litigation to seek cancellation of Mr. Blatt's unilaterally signed subscription agreements with Limited Partners for MCTI or MCTH relating to [TECH] without Mr. Goldner's consent, authorization, or approval, and/or for Mr. Blatt attempting to transact with a "major secondary markets platform" in relation to SpaceX. (Ex. 16, Page 2). Granting the PI will maintain and preserve the status quo, ensuring that the assets, equity, derivative equity, interest, property, and right to shares remain intact during the pending litigation and resolution of the dispute. The public interest will be served by preventing Mr. Blatt from causing further strain on judicial resources. Should Mr. Goldner be successful, he would then be required to pursue further legal action against any prospective LPs signed unilaterally by Mr. Blatt to regain control of Mr. Goldner's assets that Mr. Blatt would have sold. The public interest would be further served in that Mr. Blatt would likely be unable to repay prospective LPs the capital raised on behalf of MCTI or MCTH, or for Carried Interest and fees that would be due to Goldner once SpaceX IPOs.[5]

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court issue a Preliminary Injunction barring Mr. Blatt and the MegaCap Defendants, their members, officers, affiliates, employees, consultants, transferees, contractors, managers, agents, or assigns from: (i) Selling, transferring, assigning, optioning, making tender offers, executing forward contracts or option agreements, counter-signing subscription agreements, issuing subscription agreements to

[5] With SpaceX now recently gone public, and distributions are nearly imminent, this PI is necessary and urgent. https://www.reuters.com/business/aerospace-defense/spacex-targets-more-than-2-trillion-valuation-ipo-bloomberg-news-reports-2026-04-02/

prospective limited partners, signing any agreements or contracts relating to [TECH] and/or SpaceX, or encumbering, acquiring or entering into any agreement or contract of any nature on and/or for any interest and/or property and/or equity and/or assets and/or derivative equity in MCC, MCTI, MCTH, MCF, MCSX, Anthropos, or any MegaCap Related Entities, including, but not limited to, Mr. Goldner's 8,217 shares of [TECH] assigned to Mr. Goldner in the MegaCap Resolutions, and executing, negotiating, or otherwise any contract, agreement, or otherwise relating to the Tender Offer for SpaceX; (ii) Offering unauthorized rebates, discounts on carried interest, reduction of management fees, or discounts on the price per share at the MCTI basis price to prospective or current investors in MCTI; (iii) Withdrawing or transferring any funds from any of the MegaCap related entities bank accounts, capital raise accounts, with such funds to be held in an attorney trust account pending resolution of this case; (iv) Communicating with accountants, lawyers, tax advisors, consultants, brokers, or other business affiliates of any of the MegaCap aforementioned entities without including Mr. Goldner in all correspondence; (v) Misrepresenting Mr. Blatt's authority over any of the MegaCap related entities relating to the operations, transactions, or dealings with third parties including but not limited to the unauthorized litigation against the Suppliers of TECH and MCSX, attempting to transact with a third party secondaries platform relating to SpaceX, or any other type of transaction and/or deal; (vi) Issuing subscription documents to prospective investors until the case is resolved; (vii) Selling shares, subscribing Limited Partners ("LPs"), transferring equity, selling equity or derivative equity, assigning interest, optioning interest through an option agreement or a forward contract, or any other attempt to gain liquidity, including but not limited to through an attempted Tender Offer and/or closing of SpaceX, on the cash exchange of derivative equity of [TECH] to prospective LPs and/or the present value and value of fees and/or Carried Interest in relation to SpaceX; (viii)

Borrowing against the Carried Interest or the assets of [TECH] and/or SpaceX and/or any other MegaCap related investment such as Betterment or CivRobotics, or taking any loans or lines of credit, or accelerating any Management Fees that should only be taken on an annual basis; (ix) Repaying any shares to third parties or any capital contributions including but not limited to any Capital Partners such as CP-Wyoming Dubai; (x) Repaying any cash to any third party lenders such as any Capital Partners; (xi) Repaying any cash, disbursing funds, or making any financial payments to any third party or to Mr. Blatt himself and/or Wayaca, Mr. Blatt's family entity, and/or Anthropos; (xii) Paying any expenses, including operational costs, legal fees, accounting fees, tax related expenses, or administrative costs; (xiii) Conducting any form of financial movement, including but not limited to wire transfers, ACH transfers, SWIFT transfers, Bill Pay, credit card payments, bank transactions, cryptocurrency transfers or payments, asset sales, sales, equity transfers, option agreements, transfers, assignments, or fund disbursements; (xiv) Is ordered to halt all communication with any supplier, intermediary, employees, companies, broker, dealer, person, third parties, secondaries market platforms, broker dealers, affiliates, connectors, and/or entity related to the supply of shares in [TECH], SpaceX, and/or any other prospective investment opportunity relating to MegaCap on any end of the transaction or as an intermediary, broker, dealer, or otherwise itself; (xv) Is ordered to halt all attempts to seek alternative dispute resolution for any matter or instance involving or related to MCC, its SPVs and [TECH] including any third party mediations, arbitrations, and litigations; (xvi) Is ordered to halt all attempts at judicial intervention including lawsuits, perfecting judgments, and collections on accounts such as Nathan Garza Mendoza; (xvii) Is ordered to halt any filings of any tax returns, K1 generation, or creation and distribution of any tax related filings to LPs and the Internal Revenue Service relating to MCC, MCTH, MCTI, MCF, MCSX, and any other MCF SPVs; (xviii) Is barred from working with any

accountants, tax consultants, or tax lawyers on any tax related matters relating to MCC, MCTH, MCTI, MCF, and any other MCF SPVs; (xix) Is ordered to halt communicating with any Suppliers, the Primary Supplier, Capital Partners including CP-Wyoming-Dubai, LPs and prospective LPs all relating to MCC, MCTH, MCTI, MCF, and any MCF Special Purpose Vehicles; (xx) Is ordered to halt communicating with any banks and fund administrators including but not limited to Flow, FRB, Chase, and BOFA relating to MCC, MCTI, MCTH, MCF, MCSX, and any MCF SPVs; (xxi) Waives any bond requirement Goldner would have to put forth for the PI, alternatively, require Goldner to only post $1 as a bond, the same $1 that Mr. Blatt valued Mr. Goldner's alleged and fraudulent buyout offer at, and (xxii) Grant any other relief that the Court deems just and proper.

**EXPEDITED HEARING REQUESTED**

Plaintiffs request oral argument on this matter at the earliest possible opportunity in light of the time-sensitive nature of the relief requested. Plaintiffs anticipate the need for an expedited ruling by July 31, 2026 because there is an imminent IPO of a company that MegaCap has interests in and shares of the IPO may become available for disbursement following a lockup period in July, and those assets are the subject of the relief requested herein.

Dated: June 23, 2026

Respectfully submitted,

By: */s/ Stanley Q. Casey, Esq.*

Stanley Q. Casey, Esq.
Florida Bar No.: 1031011
LAW OFFICES OF STANLEY Q. CASEY PLLC
515 N Flagler Dr., Suite 350
West Palm Beach, FL 33401
Telephone: (305) 946-1510
Fax: (561) 468-2589
Email: scasey@sqcaseylaw.com

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing is being served with the complaint in this case.

/s/ *Stanley Q. Casey, Esq.*
Stanley Q. Casey, Esq.