IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:26-cv-23010

MARC J. GOLDNER, Goldner Blatt Investments, LLC, Rachel Korsen, Simon Divilov, Jasmine Garcia, and The Dharma Initiative, LLC,

Plaintiffs,

v.

ELI M. BLATT, MegaCap Capital, LLC, MegaCap Funds, LP, MegaCap Funds, LP – Tech Holding, MegaCap Funds, LP – Tech I, MegaCap Funds, LP – SpaceX I, Anthropos, LLC, Mythic Alpha, LLC, Thinkable, LLC, Michael Elkins, Wayaca, LLC, Flow, Inc., BitSource, LLC, JPMorgan Chase & Co., and Bank of America Corporation,

Defendants.
________________________________________/

**PLAINTIFFS’ OPPOSITION TO DEFENDANTS’ MOTION TO DISMISS PLAINTIFFS’ COMPLAINT [DE 73]**

Plaintiffs oppose Defendants' Motion to Dismiss [DE 73]. The Motion to Dismiss asks the Court to dismiss a forty-two-count well-pleaded Complaint without addressing a single claim on the merits. It contends that Plaintiffs incorporated immaterial common allegations into their counts and left Defendants unable to identify the claims and supporting facts, waiving them for their non-pleading. The Complaint's selected incorporation ranges and count-specific allegations clearly provide Defendants with the information they claim to lack, rendering their motion nonsensical.

## INTRODUCTION

DE 73 challenges the Complaint's length and the relevance of incorporated allegations. The Complaint answers that challenge through its claim-specific structure. Plaintiffs selected different factual ranges for different claims and defendants, identified in each count the plaintiff, defendant, legal theory, and transaction at issue, and then pleaded count-specific facts that describe the alleged misconduct. As such, Defendants cannot plausibly claim that they do not know what claims they must answer.

The governing inquiry is notice. The Eleventh Circuit has repeatedly explained that the defining feature of a shotgun pleading is the failure to give a defendant fair notice of the specific claims and the facts that support them. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323, 1323 (11th Cir. 2015); *see Dreka v. Fla. Dep't of Child. & Fams.*, 2026 WL 2718893, at *3 (11th Cir. 2026) (describing the four *Weiland* categories and applying the same notice inquiry).

Defendants' own Motion shows that they have that notice. They identify Count I, identify the February 2023 Resolutions as the contract at issue, recite the three elements of a breach-of-contract claim, identify particular incorporated allegations they believe should have been omitted, and state that they anticipate substantive Rule 12(b)(6) arguments. [DE 73 at 5–6]. A party that can identify the contract, elements, incorporated facts, and anticipated merits defenses does not

lack notice. Instead, Defendants' main contention seems to be that they disagree with the amount and length of context Plaintiffs supplied, which is not a cognizable category under *Weiland.*

Count I itself confirms the point. The Count I heading identifies Mr. Goldner as the plaintiff and Mr. Blatt, MegaCap Funds, LP – Tech Holding, and MegaCap Capital, LLC as defendants. [Compl. at 208]. Paragraph 1321 identifies the written February 2023 Resolutions as a valid and enforceable contract. Paragraph 1322 alleges a material breach. Paragraphs 1323 through 1327 quote the provisions governing communications, bank accounts, tax and accounting approval, and administrative access. Paragraph 1328 then lists sixteen alleged breaches, and paragraph 1336 pleads resulting damages. [Compl. ¶ 1328(a)–(p)]. [1] That is not a claim hidden in a "morass." [DE 73 at 5]. It is a claim pleaded in detail with a long and complex factual history.[2]

The same holds for Attorney Elkins. The Complaint gives him four separate counts, each with his name in the heading, each stating a distinct legal theory, and each describing the conduct attributed to him. Those counts identify particular letters, an April 2, 2023 email, the June 2, 2023 letter, communications with Flow and Limited Partners, alleged co-counsel activity, and the resulting harm. [Compl. ¶¶ 1699–1758]. Attorney Elkins may dispute those allegations, but his claim that the Complaint fails to plead them rings hollow and it does not leave him guessing.

Page count does not decide the issue. A complex, multiparty case can require a long pleading without becoming a shotgun pleading. In *Inform Inc. v. Google LLC*, the Eleventh Circuit reversed a shotgun pleading dismissal even though the complaint was "certainly long" and "may not be a paragon of clarity," because it was not "virtually impossible" to identify which facts supported which claims and the defendants understood the alleged conduct. 2022 WL 3703958, at *4 (11th Cir. 2022). *Inform* also drew an important line that matters here: a possible failure to

[1] ¶1331-1334 further allege that Blatt attempted to withdraw Goldner and redeem his interests in violation of F23R.
[2] This same level of detail is applied to all other Counts pled against Mr. Blatt.

allege liability adequately presents "a Rule 12(b)(6) problem, not a shotgun-pleading problem." *Id.*

The Court should deny the Motion. If the Court concludes that any particular count incorporates more background than necessary, binding law requires court-directed opportunity to correct that identified defect before any dismissal with prejudice on non-merits shotgun-pleading grounds. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295–96 (11th Cir. 2018).

## LEGAL STANDARD

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) separately requires allegations to be "simple, concise, and direct." Rule 10(b) requires numbered paragraphs, each limited as far as practicable to a single set of circumstances and separate counts when doing so promotes clarity. Neither rule imposes a numerical limit on pages, paragraphs, parties, or claims. *Weiland* identifies four general forms of shotgun pleading: (1) successive counts that adopt all preceding counts; (2) a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to a cause of action"; (3) a pleading that fails to separate distinct causes of action into separate counts; and (4) a pleading that asserts "multiple claims against multiple defendants without" identifying who did what or which defendant a claim targets. 792 F.3d at 1321–23. But "the unifying characteristic of all types of shotgun pleadings" is inadequate notice. *Id.* at 1323.

That functional inquiry matters. In *Weiland*, the Eleventh Circuit rejected shotgun pleading challenges even though some counts incorporated factual allegations that were not necessary to those counts. *Id.* at 1324–26. The court focused on whether the pleading made it "virtually impossible" to determine which facts supported which claims. *Id.* at 1325. *Inform* applied the same rule and reversed a shotgun dismissal because the defendants and the court could identify the

factual basis of the claims despite the complaint's length and imperfections. 2022 WL 3703958, at *4-5. Defendants' citations to *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* do not create a numerical limit on pleading length; those cases address plausibility.[3]

The Eleventh Circuit has also stated the same rule in even clearer terms. In *Charles v. GEO Group Inc.*, the court explained that the shotgun inquiry concerns "substance, not form" and asks whether the complaint gives fair notice of the specific claims and supporting facts. 2024 WL 1619911, at *2 (11th Cir. 2024). The court vacated and remanded, even though the pleadings displayed some shotgun characteristics, because the defendants could still understand the claims. *Id.* at *3–4. Rule 8 does not demand "technical exactness" or a "model[] of efficiency." *Id.* Thus, by focusing almost exclusively on facially defective shotgun-pleading allegations, Defendants expressly waive and cannot raise merits- or facts-based arguments in their reply and cannot bring later Motions to Dismiss to raise them at a later stage.

## ARGUMENT

### I. THE COMPLAINT USES SELECTED INCORPORATION RANGES AND COUNT-SPECIFIC ALLEGATIONS TO GIVE FAIR NOTICE

The Motion describes approximately 1,300 common allegations as "incorporated into each count." DE 73 at 3. The actual incorporation clauses select different ranges. Defendants also argue that those selected ranges include immaterial allegations. *Id.* at 4–6. The counts answer that objection by identifying the parties, legal theories, and conduct supporting each claim clearly.

Count I does not incorporate paragraphs 1 through 1319. It incorporates selected ranges: paragraphs 1–318, 622–624, 661–1248 through specifically identified blocks, and 1314–1319.

---

[3] Their cited *Peraza*, *Waxman*, and *Beckwith* decisions likewise frame the shotgun inquiry in terms of whether a defendant can understand the claim and frame a response. *Dreka* applied the same notice rule. 2026 WL 2718893, at *3.

[Compl. ¶ 1320]. Those ranges total 915 allegations, not 1,319. Put differently, Count I omits 404 of the common allegations, amounting to directed, selective incorporation and not the blanket incorporation Defendants wrongly claim.

The Elkins counts use a materially narrower subset. Counts XXIV through XXVII incorporate selected ranges totaling 687 common allegations. [Compl. ¶¶ 1699, 1706, 1721, 1738]. They therefore omit 632 of the 1,319 common allegations. They also omit entire factual blocks that Count I includes. Count XXVIII, directed to the Wayaca, Blatt, and Mythic investment dispute, uses yet another set of ranges before pleading the specific agreements, communications, investments, and distributions at issue. [Compl. ¶¶ 1759–1768]. The Complaint repeatedly changes its incorporation ranges to match the claim and defendants.

This tailored incorporation matters under *Barmapov*. There, the Eleventh Circuit held that a second amended complaint fell within *Weiland*'s second category because it was "rife with immaterial" allegations and, in nine counts, "indiscriminately" incorporated 249 factual paragraphs "without any effort to connect or separate which" facts related to which claim. *Barmapov v. Amuial*, 986 F.3d 1321, 1325–26 (11th Cir. 2021). Here, Plaintiffs made the distinction *Barmapov* found missing. The incorporation blocks change with the defendant, transaction, and theory, and each count then pleads additional claim specific facts.[4]

The Complaint also avoids the classic first *Weiland* defect. Plaintiffs do not incorporate Count I into Count II, Counts I and II into Count III, and so on until the final count becomes a combination of everything that came before.[5] Rule 10(c) expressly permits adopting statements by

[4] The Complaint selects which factual paragraphs to incorporate based on the defendant, transaction, and legal theory involved. Each count then adds factual allegations specific to that claim.

[5] In fact, this shotgun pleading tactic is what Mr. Blatt himself was accused of in the Prior Action, not once, but twice in two adopted Reports & Recommendations that were not objected to, nor appealed by Mr. Blatt. [DE 61 at 10–12; DE 204 at 34–37; DE 204 at 13; DE 208 at 2, Case No. 1:23-cv-24819-DPG].

reference within the same pleading. Fed. R. Civ. P. 10(c). Each count incorporates selected factual allegations and then pleads the legal claim separately. *Weiland* expressly distinguished that structure from the prototypical shotgun complaint. 792 F.3d at 1324.

These differences rebut the Motion's description of the incorporation structure. The claim specific allegations identify the relevant contracts, communications, conduct, and resulting harm. The Motion fails to show that the incorporated background prevents Defendants from understanding those allegations.

## II. COUNT I GIVES DEFENDANTS DETAILED NOTICE OF THE CONTRACT, THE BREACHES, AND THE DAMAGES

Defendants choose Count I as their primary example. Count I instead demonstrates why the Motion fails. Defendants cite *Cibran Enterprises, Inc. v. BP Products North America, Inc.*, 365 F. Supp. 2d 1241, 1254 (S.D. Fla. 2005), for the three elements they contend govern Count I: a valid contract, material breach, and damages. The Complaint expressly pleads each.

Paragraph 1321 identifies the February 2023 Resolutions, alleges that Mr. Blatt and Mr. Goldner negotiated and signed them in writing, and alleges a valid and enforceable contract. Paragraph 1322 alleges material breach. Paragraphs 1323 through 1327 quote the provisions allegedly breached. Paragraph 1328 then lists sixteen alleged breaches, including removing Mr. Goldner from financial accounts, bank accounts, Flow, email, and administrative systems, withholding K-1s, acting unilaterally on tax and accounting matters (and now legal matters), dispossessing Mr. Goldner of his 8,217 TECH shares, and sending an unambiguously unauthorized secret withdrawal and invalid redemption notice. Paragraph 1336 pleads resulting damages.

The February 2023 Resolutions, attached as Exhibit 1, reinforce why these subjects belong together. As an attached written instrument, the Resolutions are part of the pleading under Rule 10(c). The signed document addresses equal administrative access, MegaCap communications and

platforms, bank and financial accounts, unanimous accounting and tax approval (read with the MCC OA and MOU), Class A member rights, and the derivative TECH interests. The contract itself therefore ties together the very operational systems that Defendants characterize as unrelated.

Defendants contend, for example, that Count I incorporates allegations concerning Flow and the banks. [DE 73 at 5]. Instead, Count I alleges that Mr. Blatt breached the Resolutions by removing Mr. Goldner from Flow and from MegaCap's financial and bank accounts. [Compl. ¶ 1328(a)–(f)]. The allegations concerning those systems and service providers explain the mechanics and consequences of the access changes that Count I identifies as breaches. To the extent some details also support separate claims against Flow or the banks, factual overlap does not make Count I unintelligible. In fact, it is the very reason that there are multiple defendants in this instant action and the Counts regarding those Defendants list them only where applicable.

The Motion similarly isolates references to Abu Dhabi, Dubai, Steve Wozniak, and Amazonico. Read in sequence, those allegations introduce the CP-Wyoming-Dubai relationship, explain how the parties began discussing TECH, and lead into the financing relationship and disputes that later form part of the chronology surrounding and directly leading to the February 2023 Resolutions. ¶¶ 203–210 trace the trip, the introduction to the CP affiliate, and the TECH discussions, culminating in Goldner's addition of Blatt to a WhatsApp group. These pleaded communications place Blatt within that business relationship; they are not an unrelated travel narrative and are necessary in connecting parties and to frame a timeline. *Weiland* asks whether the claim and its grounds remain discernible, not whether every incorporation is indispensable.

The related litigation also bears on the claims. The Complaint alleges that Mr. Goldner first discovered the purported January 2023 withdrawal notice in prior court filings and that Mr. Blatt later changed his sworn account in a manner Plaintiffs allege violated the Operating Agreement.

[Compl. ¶¶ 684–688, 875]. That history explains the parties' competing positions about membership, authority, and contractual compliance. It also explains why Plaintiffs bring intertwined claims together here. [Compl. ¶¶ 31–37, 1314–1319]. Describing related proceedings involving these parties and transactions does not deprive Defendants of notice.[6] *Phillips & Jordan, Inc. v. Ironshore Specialty Ins. Co.*, 2026 WL 2191493, at *3 (M.D. Fla. 2026) (rejecting a shotgun pleading challenge where allegedly irrelevant background, including earlier litigation, did not deprive defendants of adequate notice).

*Weiland* confirms that overinclusion does not automatically equal shotgun pleading. The question is whether the count remains understandable. 792 F.3d at 1324–26. *Inform* makes the same point even more directly: a long complaint can survive a shotgun challenge when the court and the defendants can identify the facts supporting each count. 2022 WL 3703958, at *4. Count I leaves no genuine uncertainty about the contract, the provisions at issue, the alleged breaches, or the damages. Defendants' own detailed attack on why particular facts are unnecessary confirms that they understand the claim and the factual allegations associated with each and every count.

## III. ATTORNEY ELKINS'S FOUR COUNTS IDENTIFY HIS ALLEGED CONDUCT WITH PARTICULARITY

The Motion states that Attorney Elkins "has no idea which facts apply to the causes of action against him specifically." [DE 73 at 5]. The four Elkins counts say otherwise.

Count XXIV identifies Attorney Elkins alone as the defendant and alleges aiding and abetting breach of fiduciary duty. [Compl. ¶¶ 1699–1705]. It alleges the underlying duty and breach, then lists Elkins's alleged assistance: legal advice relating to Goldner's removal, letters

[6] The Complaint alleges that Mr. Blatt, acting unilaterally through MCC, filed another action on the same core facts without identifying it as related, and later filed a Palm Beach action twenty-eight minutes after the first related federal action closed. [Compl. ¶¶ 35–36, 824–828 & n.4]. Plaintiffs should not be faulted for explaining the relationship among those proceedings. Moreso, Mr. Blatt has filed a second action against WCEP since the filing of Plaintiffs complaint after his initial one was voluntarily dismissed. [*See* Case No. 0:26-cv-62635, DE 1, 5, and 6]

concerning Goldner's status, communications with Flow and Limited Partners, work with Attorney Muschel, representations about the scope of Elkins's involvement, and alleged knowledge of the dispute. Count XXV separately alleges aiding and abetting fraud. [Compl. ¶¶ 1706–1720]. It identifies the alleged underlying false statements about Mr. Goldner's status, Attorney Elkins's alleged knowledge, the June 2, 2023 letter, communications with Flow and Limited Partners, alleged co-counsel activity, and resulting damages. Count XXVI separately alleges tortious interference. [Compl. ¶¶ 1721–1737]. It identifies the contracts, alleges Attorney Elkins's knowledge, describes the alleged interference with Mr. Goldner's membership, managerial status, Google Workspace, Flow, and bank access, and pleads the resulting harm. Count XXVII alleges separate fraudulent misrepresentation. [Compl. ¶¶ 1738–1758]. Paragraph 1741 identifies the April 2, 2023 email and enumerates six representations that Plaintiffs allege were false. The succeeding paragraphs identify the conduct Plaintiffs contend contradicted those representations.

That pleading structure does not resemble the fourth *Weiland* category. Plaintiffs do not accuse an undifferentiated group and force Attorney Elkins to guess whether a particular act belongs to him. They identify Attorney Elkins by name, separate four theories into four counts, and describe the conduct attributed to him. The underlying MegaCap fiduciary breaches and fraud explain what Attorney Elkins allegedly assisted. [Compl. ¶¶ 1699–1720]. Recounting his alleged involvement does not impair his ability to answer the identified acts. Whether those allegations ultimately establish liability presents a merits question. *Inform*, 2022 WL 3703958, at *4 ("[T]hat's a Rule 12(b)(6) problem, not a shotgun-pleading problem.").

## IV. THE COMPLAINT IDENTIFIES THE CLAIMS AGAINST THE OTHER MOVING DEFENDANTS RATHER THAN "LUMPING" FIFTEEN DEFENDANTS TOGETHER

The Motion asserts that fifteen defendants are "inexplicably lumped together" and cannot determine "what is being alleged against whom." [DE 73 at 6]. The Complaint's table of contents

and count headings identify which plaintiff asserts which claim against which defendant or defendants, and the body of each count then pleads conduct tied to that claim with particularity.[7]

For example, the Count XXVIII heading identifies GBI and Goldner as plaintiffs and Wayaca, Blatt, and Mythic Alpha as defendants. [Compl. at 319]. The count then identifies the alleged oral and written agreement, the March 2022 communications, the Troutwine investments, the alleged failure to transfer the Dragonfire and Mythic/Delphi interests, and the alleged August 2023 distributions. [Compl. ¶¶ 1760–1768]. Wayaca and Mythic do not need to search the other forty-one counts to learn what transaction that claim concerns. This is purely a deflective tactic.

The same pattern appears across the other moving defendants. Count XV expressly names Mr. Blatt, BitSource, Anthropos, Thinkable, MCC, MCF, MCTH, and MCTI on the DTSA claim and then pleads that claim beginning at paragraph 1552. Count XVI separately identifies the defendants against whom GBI and Mr. Goldner seek a constructive trust and begins at paragraph 1585. Counts XIX and XX identify Mr. Blatt and BitSource on the BitSource fiduciary-duty and declaratory claims.[8] Counts XXI through XXIII separately identify Mr. Blatt and Anthropos and then Anthropos alone. Counts XXVIII and XXIX identify GBI and Mr. Goldner as plaintiffs and Wayaca, Mr. Blatt, and Mythic Alpha as defendants. Count XXXVIII identifies each Civil RICO defendant by name and then pleads entity-specific participation allegations. [Compl. ¶¶ 1983–

[7] DE 73 also objects to background about nonparties. [*Id.* at 6]. A participant's role in a transaction can explain a claim without making that participant a defendant in a particular count. The count headings separately identify the persons and entities against whom Plaintiffs seek relief. The relevant Counts clearly do not assert claims against these non-parties. Defendants' attempts at elevating them to party status, and then claiming confusion, are defeated by a plain reading of the relevant Count.

[8] Mr. Blatt and BitSource have failed to prove that they have the necessary and required authority to have BitSource represented by counsel, as the other Class A Managing Members, such as Courtney and Jon Spaeth, expressed written approval is a prerequisite before counsel may be hired. Likewise, Mr. Blatt is unable to hire counsel for the MegaCap Related Entities without Mr. Goldner's permission and authorization as per the MCC OA terms limiting entering into contracts as a "unanimous" decision. Put differently, until Mr. Blatt can definitively resolve the MegaCap Related Entities' ownership question in his favor, he lacks the requisite authority to hire counsel on any of the MegaCap Related Entities' behalf.

2003]. Count XXXXI identifies Ms. Garcia as the plaintiff and specifically names the defendants against whom she asserts the FLSA claim while incorporating her employee-specific factual section. [Compl. ¶¶ 2068–2089]. Ms. Garcia's claim stands alone. The Complaint therefore does not make a moving defendant search forty-two counts to discover whether a claim targets it.

DE 73 never performs the same count-specific analysis for most of those moving defendants. The Motion seeks dismissal for all movants, but its concrete pleading analysis focuses almost entirely on Count I and the four Elkins Counts. It does not explain why the separately identified DTSA claim against BitSource, Anthropos, and Thinkable, the Anthropos-specific counts, the Wayaca/Mythic counts, the MegaCap accounting and declaratory counts, or the Civil RICO count leave those defendants unable to identify the claims against them. A global assertion that "[e]very single count" suffers the same defect cannot substitute for that analysis when the count headings and supporting allegations identify each defendant's alleged conduct. [DE 73 at 6].

Rule 10(b) also cuts against Defendants' theory. In keeping with the Rule, Plaintiffs used numbered paragraphs and separated the causes of action into forty-two distinct counts. The count headings identify the relevant plaintiffs and defendants. DE 73 does not identify any count that improperly rolls a separate cause of action into another count. The number of separately pleaded counts in a multiparty case does not show a Rule 10(b) violation. It often, as done here, reflects compliance with Rule 10(b)'s direction to separate claims for clarity.

Defendants' "lumped together" rhetoric also does not establish a shotgun defect. [DE 73 at 6]. Plaintiffs allege overlapping conduct involving MegaCap and its SPVs, GBI, BitSource, Wayaca, Anthropos, Thinkable, Flow, financial institutions, and the individuals who allegedly participated in or facilitated that conduct. [Compl. ¶¶ 1314–1319]. Splitting these allegations into fifteen separate complaints, as Defendants agitate for, would repeat the same transactions,

communications, and access disputes, multiply overlapping discovery, and risk inconsistent outcomes, something which Plaintiffs actively seek to avoid and which Defendants actively seek.[9] The Complaint expressly explains those efficiency concerns. [Compl. ¶¶ 1314–1319]. The relevant question here remains whether each moving defendant can identify the claims asserted against it. The Complaint's count headings and count specific allegations allow exactly that.

## V. LENGTH ALONE DOES NOT ESTABLISH A SHOTGUN PLEADING, AND DEFENDANTS' OWN AUTHORITIES TURN ON DEFECTS THAT ARE NOT PRESENT HERE

Defendants rely heavily on raw numbers. They compare 397 pages and 2,116 paragraphs to shorter pleadings dismissed in *Yeyille*, *Adams*, and *Osahar*. [DE 73 at 3–4]. That comparison omits the features that drove those decisions. The Eleventh Circuit has expressly warned against using length as a proxy for shotgun pleading. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1293 n.2 (11th Cir. 2018), cautioned that its discussion of a complaint's length "should not be construed as an indictment against all long complaints." *See Bailey v. Janssen Pharmaceutica, Inc.*, 288 Fed.Appx. 597, 603 (11th Cir. 2008) ("[A] complaint—so long as it is minimally sufficient to put a defendant on notice of the claims against him—will not fail for mere surplusage."). Length can illustrate a notice problem when the pleading has one; it does not create the problem by itself. Rather, the Complaint's length is due to the complexity of its facts and the number of parties

---

[9] Notably, as identified by Judge Singhal, Mr. Blatt is clearly forum shopping. June 24, 2026 Hr'g Tr. 12:21–25, *MegaCap Capital LLC v. West Coast Equity Partners II LLC*, No. 0:26-cv-61179-AHS (S.D. Fla.). MegaCap Capital, under Mr. Blatt's unauthorized direction, pursued the WCEP dispute in federal court and voluntarily dismissed that action on August 30, 2026. That same day, Blatt filed a derivative action against WCEP in Broward County state court. [DE 87, Case No. 0:26-cv-61179-AHS; DE 1 at 1–2 ¶ 1, Case No. 0:26-cv-62635-JTK]. Blatt also pursued litigation against GlobalX through MegaCap Funds, LP–Tech Holding and brought separate actions, individually or through MegaCap Capital, against several Plaintiffs here. [DE 1 ¶¶ 31–36, 1222]; *see also* [Defs.' Mot. to Dismiss at 1–2, *MegaCap Funds, LP–Tech Holding v. Pisciotti,* No. 2025-015565-CA-01 (Fla. 11th Cir. Ct. Mar. 13, 2026), Filing No. 243763926]. Mr. Blatt is clearly attempting to separate common allegations to gain inconsistent rulings and forum shop. On the contrary and in order to save on judicial resources and ensure rulings are consistent, Plaintiffs sought to coordinate and consolidate this action with the related action before Judge Gayles. DE 36 at 1–2, 4–6 (Plaintiffs' Motion to Transfer or Reassign).

implicated therein.[10] The Complaint also alleges fraud, which Rule 9(b) requires Plaintiffs to plead with particularity. Identifying speakers, communications, dates, timelines, parties involved and associated therewith, and alleged misrepresentations serves that explicit requirement and gives notice. Fed. R. Civ. P. 9(b). Such detail is not itself a shotgun defect and Plaintiffs should not be admonished for following the Rules.

*Okposio v. Barry University, Inc.*, 2023 WL 7484223, at *3–4 (11th Cir. Nov. 13, 2023), is especially instructive. The proposed complaint there spanned "101 pages, 423 paragraphs," 6 defendants, and 35 counts. *Id.* at *2-3. The Eleventh Circuit still held that it was not a shotgun pleading because it presented the facts chronologically and each count "adopts and realleges specific paragraphs" to connect particular facts to a particular cause of action. *Id.* at *3. The court also held that "surplusage" alone did not prevent the defendants from understanding the claims and reiterated that the rules require adequate notice, not "a model of efficiency or specificity." *Id.* Plaintiffs used the same basic organizing device here: a chronological factual section followed by separate counts that select particular factual ranges and then plead count specific allegations. *See also In re Consumer Vehicle Driving Data Tracking Collection*, 2026 WL 1092882, at *5–6 (N.D. Ga. 2026) (rejecting a shotgun challenge to a 627-page, 65-count complaint despite each count's incorporation of 973 factual paragraphs, where the factual allegations supported the claims and separate counts identified the relevant defendants). *Charles* confirms the same substantive notice inquiry in a counseled case. 2024 WL 1619911, at *1-2.

---

[10] Courts have repeatedly rejected shotgun pleading challenges where, as here, the complaint's length reflects the complexity of the dispute and defendants have adequate notice of the claims and supporting facts. *See Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, 2021 WL 734575, at *6 (M.D. Fla. 2021) (rejecting a shotgun challenge to a ninety-four page complaint where the alleged conspiracy was complex and defendants could prepare a response); *Gov't Emps. Ins. Co. v. KJ Chiropractic Ctr. LLC*, 2014 WL 12617566, at *3 (M.D. Fla. 2014) (rejecting a Rule 8 objection to a 143-page complaint given the dispute's complexity, numerous defendants and claims, and heightened pleading requirements for fraud); *Simon Prop. Grp., Inc. v. Lauria*, 2012 WL 1934405, at *4 (M.D. Fla. 2012) (rejecting a shotgun challenge where the complaint's length reflected the "size and complexity of the alleged scheme.").

*Adams v. Huntsville Hospital*, 819 F. App'x 836, 838–39 (11th Cir. 2020), likewise followed a court-directed opportunity to cure. The defendant first moved for a more definite statement, the district court granted that motion, and the plaintiff filed an even longer amended complaint that still mixed theories and failed to connect facts to claims. The 72-page length was an additional problem, not a freestanding numerical rule. *Osahar v. U.S. Postal Service*, 297 F. App'x 863, 864 (11th Cir. 2008), involved a 62-page amended pleading that the district court had already ordered the plaintiff to revise, yet it remained "replete with factual allegations and rambling legal conclusions." The Eleventh Circuit affirmed after repeated amendment efforts. *Id.* Here, by contrast, the counts themselves identify the claims, parties, and factual theories; Plaintiffs do not require the Court to reconstruct a cause of action from exhibits or scattered allegations, nor do they state even *one* allegation that is unclear or needs clarification.[11]

*Barmapov* is also materially different. The first amended complaint was "116 pages and 624 numbered paragraphs," asserted twenty causes of action against twenty-three named defendants plus John Does, and failed to identify coherently what many defendants allegedly did. 986 F.3d at 1322–25.[12] Here, Plaintiffs use selected ranges, identify the defendants in each count, and plead count-specific conduct.

Defendants' case *Beckwith v. BellSouth Telecommunications, Inc.*, 146 F. App'x 368, 371–73 (11th Cir. 2005), likewise underscores the notice problem that is absent here. There, only a few claims identified a specific defendant, the relevant facts were not segregated to the claims, and it

---

[11] The cases also involved different numbers of defendants. *Adams* involved one defendant, Huntsville Hospital. *Adams v. Huntsville Hospital*, 819 Fed.Appx. 836, 837 (11th Cir. 2020); *Osahar* involved one defendant, the Postal Service through its Postmaster General. 297 F. App'x at 863–64. *Yeyille* involved multiple defendants, specifically: the full caption lists six. *Yeyille v. Miami-Dade Cnty. Pub. Schs.*, 643 F. App'x 882 (11th Cir. 2016). The controlling distinction remains the failure to provide notice and cure identified defects, not a ratio of pages to defendants. Here, there are ***fifteen* defendants**, and thus, more pages will be necessary to adequately set out each party's involvement.
[12] The district court dismissed that pleading as shotgun, explained the defects, and gave the plaintiff another chance. *Id.* The second amended complaint still indiscriminately incorporated large blocks of immaterial allegations and remained nearly incomprehensible, so the Eleventh Circuit affirmed dismissal with prejudice. *Id.* at 1325–26.

was "virtually impossible" to tell which facts supported which claims. *Id.* at 372. The district court therefore could require a more definite statement. But the Eleventh Circuit reversed dismissal with prejudice because the court had not made the findings required for that severe sanction. *Id.* at 373. The present Complaint does what *Beckwith* lacked: it names the defendant or defendants in each count and pleads the conduct attributed to them.[13]

Most importantly, *Weiland* and *Inform* show the other side of the line. *Weiland* held that imperfect incorporation does not make a complaint shotgun when the counts remain understandable. 792 F.3d at 1324–26. *Inform* reversed a shotgun dismissal even after the district court had already ordered repleading, because the amended complaint, though "certainly long" and not a "paragon of clarity," still allowed the court and defendants to identify the facts supporting each count. 2022 WL 3703958, at *1, *4-5.

The Southern District of Florida applied that rule. In *Zagury v. Puragain Water, LLC,* 2026 WL 2299332, at *3 (S.D. Fla. 2026), the court rejected a shotgun challenge even though every count incorporated the entire factual background. The court stated that "[i]ncorporating all factual allegations does not make a complaint a shotgun pleading" and focused instead on whether the counts remained understandable under *Weiland*. *Id.* (citation omitted). Plaintiffs' Complaint uses a more tailored structure than the pleading upheld in *Zagury*: Count I omits 404 common allegations, the Elkins counts omit 632, and other counts use still different ranges.[14] *Charles*

[13] Notably, the Court has not ordered any amendments or alterations to the Complaint, and, as such, Defendants' reliance upon cases such as *Beckwith* is premature, at worst, and distinguishable, at best.

[14] Using the 1,319 common-allegation paragraphs as the baseline and counting overlapping references only once, the counts omit the following numbers of common-allegation paragraphs: Counts I, III, VII, and XII, 404 each; Count II, 344; Counts IV and VIII, 474 each; Count V, 721; Count VI, 854; Count IX, 326; Count X, 363; Count XI, 791; Count XIII, 720; Count XIV, 495; Count XV, 395; Count XVI, 65; Count XVII, 371; Count XVIII, 453; Counts XIX and XX, 607 each; Count XXI, 124; Counts XXII and XXIII, 238 each; Counts XXIV–XXVII, 632 each; Counts XXVIII and XXIX, 449 each; Counts XXX–XXXII, 677 each; Counts XXXIII–XXXV, 486 each; Counts XXXVI and XXXVII, 491 each; Count XXXVIII, 137; Counts XXXIX and XXXX, 635 each; Count XXXXI, 584; and Count XXXXII, 360. These figures reflect the incorporation clause at the beginning of each count and exclude the additional allegations pleaded within that count.

independently answers any suggestion that these principles depend on pro se leniency. The plaintiff there had counsel. 2024 WL 1619911, at *1. The Eleventh Circuit nevertheless vacated the shotgun dismissal because, despite identified pleading imperfections, the defendants and the district court could understand the claims and supporting allegations. *Id.* at *3–4. The same practical test governs here.

A recent Eleventh Circuit decision confirms the same rule. In *Dreka*, the court affirmed dismissal only after the district court identified the precise defect in an earlier pleading, gave the plaintiffs an opportunity to fix it, and the second amended complaint still failed to identify which defendants faced several counts. 2026 WL 2718893, at *2-3. *Dreka* therefore reinforces both sides of Plaintiffs' position: clear defendant-by-defendant pleading addresses the core notice concern and a court must give identified opportunities to replead before dismissing an action with prejudice on shotgun grounds.

Defendants' authorities therefore do not establish a rule under which 62 pages, 72 pages, or 148 pages become benchmarks for an automatic Rule 8 violation. They show that courts dismiss pleadings when structure and substance deprive defendants of notice, especially after the court identifies defects and the plaintiff fails to correct them. Those facts are absent here.

## VI. THE PRIOR COUNTERCLAIM DOES NOT SUPPLY A PRIOR COURT-DIRECTED OPPORTUNITY TO CURE, AND THE PRESENT COMPLAINT CHANGED THE FEATURE DEFENDANTS PREVIOUSLY CRITICIZED

Defendants have previously attacked Plaintiffs' former Counterclaim as a shotgun pleading. That history does not convert the present Complaint into one. The prior Counterclaim used a materially different incorporation structure. Its counts repeatedly realleged all 999 common factual allegations. Defendants' prior motions focused on that blanket incorporation. The present Complaint changed that structure. It uses different paragraph ranges for different claims and

defendants, and it does not incorporate preceding counts into later counts, as Mr. Blatt had done and had his claims dismissed with prejudice under Rule 8 for failure to comply with directions.

Notably, no court adjudicated Plaintiffs' prior Counterclaim to be a shotgun pleading and then ordered Plaintiffs to replead it. Defendants' earlier motions do not establish that Plaintiffs failed to comply with a repleading order. The procedural histories in *Vibe Micro*, *Jackson*, *Barmapov*, and *Dreka* involved an opportunity to cure followed by a pleading that retained the identified defects. *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1357–59 (11th Cir. 2018), illustrates the distinction. There, defendants' motions for a more definite statement explained the pleading defects. *Id.* at 1358. Plaintiffs did not oppose those motions, the district court granted them and ordered a sufficient complaint, and plaintiffs then filed another complaint with the ***same*** defects. *Id.* at 1358-59. The Eleventh Circuit focused on plaintiffs' receipt of fair notice and a meaningful chance to fix the identified deficiencies. *Id.* at 1358. Plaintiffs received no comparable order directed to their prior Counterclaim.[15] The present pleading shows why the prior motions cannot substitute for the required analysis now. Plaintiffs did not simply refile the old 999-paragraph blanket-incorporation structure. They tailored incorporation ranges and added count-specific allegations to ensure additional clarity and compliance with the Rules. The Court should judge DE 1 as it exists, not as Defendants describe a different pleading filed in a different action.[16]

## VII. *VIBE MICRO* & ELEVENTH CIRCUIT AUTHORITY CONFIRM THAT, EVEN IF THE COURT IDENTIFIES A SHOTGUN DEFECT, PLAINTIFFS MUST RECEIVE MEANINGFUL OPPORTUNITIES TO CURE BEFORE DISMISSAL WITH PREJUDICE

[15] The Court never determined Plaintiffs Counterclaim was an impermissible shotgun pleading.

[16] Notably, the prior Counterclaim was **"STRICKEN,"** due to Mr. Blatt being unable to plead a cognizable complaint in his Second Amended Complaint in the Prior Action. *See* DE 204 in Case No. 1:23-cv-24819-DPG. Thus, The Court struck the prior Counterclaim on procedural grounds. It did not decide the shotgun-pleading objections or direct Plaintiffs to cure a shotgun defect. [DE 204 at 48–51, 55; DE 208 at 2, Case No. 1:23-cv-24819-DPG].

Defendants cite *Conaway v. Carnival Corporation*, 2026 WL 2444569, at *2–3 (S.D. Fla. 2026), in a footnote while purporting to reserve future Rule 12(b)(6) arguments. [DE 73 at 6 n.1]. That August 20, 2026 order addressed a later merits motion directed to an amended complaint after the court had already dismissed the original complaint on shotgun grounds and granted leave to amend. It does not alter the binding rule that governs a dismissal with prejudice on shotgun grounds. *Vibe Micro* holds that when a represented litigant files a shotgun pleading, the district court must give that litigant opportunities to replead before dismissing the case with prejudice on non-merits shotgun grounds and the repleading order should explain how the pleading violates the shotgun rule so the litigant can correct it. 878 F.3d at 1295–96. *Dreka* applied that rule: the court must "give [the plaintiff] one chance to replead" and should explain the defect. *Dreka*, 2026 WL 2718893, at *3. Plaintiffs maintain that DE 1 already gives fair notice and requires no repleading. But if the Court concludes that particular incorporation ranges remain too broad, Plaintiffs expressly request a targeted order identifying those ranges and leave to file a streamlined amended complaint. That approach would address any Rule 8 concern without converting a pleading-form dispute into a merits dismissal.

**VIII. DEFENDANTS' FOOTNOTE ABOUT FUTURE MERITS ARGUMENTS DOES NOT SUPPORT THE SHOTGUN MOTION**

Defendants state they anticipate "a variety of arguments for dismissal under Rule 12(b)(6)" but decline to present them because they say the current pleading prevents substantive review. [DE 73 at 6 n.1]. That reservation does not establish a Rule 8 or 10 defect. The Court should decide the issue Defendants actually present: whether DE 1 deprives them of fair notice. Their ability to identify Count I's contract, elements, facts, and alleged excess detail shows otherwise.

The Court need not decide now what merits defenses Defendants may raise later or the proper procedural vehicle for any later challenge. *Conaway* itself treated an initial shotgun-

pleading dismissal under Rules 8 and 10 separately from a later Rule 12(b)(6) motion directed to an amended complaint. 2026 WL 2444569, at *2–3. Defendants' unilateral reservation cannot override Rule 12(g)(2)'s limits on successive motions raising previously available defenses. Plaintiffs preserve that objection, subject to Rule 12(h)(2) and the nature of any later motion, with asserting that every merits defense is waived. Nothing about that future question supplies a basis to dismiss the present Complaint as shotgun.

Moving Defendants try to reserve future Rule 12(b)(6) arguments. [DE 73 at 6 n.1]. A Rule 12(e) motion is "the proper method for seeking compliance under Rule 10." *Chen v. Cayman Arts, Inc.*, 2011 WL 1085646, at *2 (S.D. Fla. 2011) (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (explaining that a defendant facing a shotgun complaint "is expected to move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement"). Plaintiffs submit that DE 73 functions as such a motion because Moving Defendants claim they cannot respond. [DE 73 at 5–6]; *see Conradis v. Geiger*, 2019 WL 448311, at *2 (M.D. Fla. 2019) (holding that motions invoking Rule 10 or Rules 10 and 12 "necessarily triggered Rule 12(e), as it is the vehicle by which Rule 10 violations are addressed by the Court.").

If the Court construes DE 73 accordingly and permits the existing Complaint to proceed without amendment, Rule 12(g)(2) bars Moving Defendants from filing another pre-answer Rule 12(b)(6) motion raising previously available grounds omitted from DE 73, despite their reservation. *See Kaleta v. City of Holmes Beach*, 2023 WL 3791338, at *1–2 (M.D. Fla. June 2, 2023) (barring a second motion after a Rule 12(e) challenge because the defendant failed to show its new defenses "were unavailable to it in its first motion").[17]

[17] *See Young v. Centerville Clinic, Inc.*, 2009 WL 4722820, at *2 n.2 (W.D. Pa. 2009) (construing the request as "a 12(e) Motion for a More Definite Statement" because Rules "8 and 10 do not provide a basis for dismissal"); *see also Tecnoglass, LLC v. RC Home Showcase, Inc.*, 2017 WL 4481169, at *2–3 (S.D. Fla. 2017) (denying the successive motion as to the tortious interference claim because Rule 12(h) did not authorize raising a defense omitted from the

Thus, Plaintiffs argue that Defendants have individually and collectively waived their ability to raise a further 12(b)(6) motion and bring a ***second*** Motion to Dismiss if this Honorable Court determines that Plaintiffs well-pleaded complaint is in fact deemed ***not*** a shotgun pleading.

**CONCLUSION**

Defendants have not shown that the Complaint prevents them from understanding the claims asserted against them or the grounds on which those claims rest. The Complaint uses different incorporation ranges for different claims and defendants, separates its causes of action into distinct counts, identifies the parties to each count, and adds count-specific facts describing the alleged conduct.[18] Rule 8 and Rule 10 require fair notice, not a numerical page limit or a model of brevity. *Vibe Micro* expressly warns against treating length itself as disqualifying, and courts have confirmed that even lengthy, repetitive, or imperfect pleadings are not shotgun pleadings when the defendants can identify the claims and supporting facts. *Vibe Micro*, 878 F.3d at 1293 n.2. Because this Complaint provides that notice, the Court should **DENY** DE 73. *In the alternative*, if the Court identifies a specific incorporation range or count that requires narrowing, Plaintiffs request a targeted repleading order, explanatory direction of how to balance particularity with fraud claims while maintaining a well-pleaded complaint, and leave to amend. Finally, Plaintiffs request an order that Defendants' be barred from bringing further motions to dismiss on this Complaint should their current motion fail.

Dated: October 29, 2026
West Palm Beach, FL

prior Rule 12(b) motion based on "the mistaken belief that the court would take certain actions that ultimately it did not").

[18] Count I illustrates the point as just *one* example. Defendants know the contract, the parties, the provisions allegedly breached, the conduct alleged to constitute breach, and the damages claimed. Mr. Blatt himself has brought competing claims against several of the Plaintiffs in this very court and, thus, cannot in good faith claim that he is unaware of what the claims Plaintiffs bring against him actually entail. Rather, their own Motion demonstrates that understanding. Attorney Elkins likewise receives four separately identified counts containing detailed allegations of his own conduct. The other moving defendants receive the same claim-by-claim identification.

Respectfully submitted,

By: */s/ Stanley Q. Casey, Esq.*

Stanley Q. Casey, Esq.
Florida Bar No.: 1031011
LAW OFFICES OF STANLEY Q. CASEY PLLC
515 N Flagler Dr., Suite 350
West Palm Beach, FL 33401
Telephone: (305) 946-1510
Fax: (561) 468-2589
Email: scasey@sqcaseylaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 29, 2026, a true and correct copy of the foregoing was served on all counsel of record receiving notice by CM/ECF.

Respectfully submitted,

By: */s/ Stanley Q. Casey, Esq.*

Stanley Q. Casey, Esq.